# United States Court of Appeals
### For the Eighth Circuit

_____

No. 12-3092

_____

United States of America

*Plaintiff - Appellee*

v.

Richard Westmoreland Mathias

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: April 11, 2013
Filed: July 31, 2013

_____

Before MURPHY, BEAM, and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

Richard Westmoreland Mathias was indicted with one count of conspiracy to manufacture marijuana in violation of 21 U.S.C. §§ 841(b)(1)(B), 846. He pleaded guilty, conditioned on his right to challenge the district court's[1] denial of his motion

_____

[1]The Honorable James E. Gritzner, Chief Judge, United States District Court for the Southern District of Iowa.

to suppress evidence arising from Mount Pleasant, Iowa, Police Officer Lyle Murray's observation of marijuana plants growing in Mathias's back yard. Mathias now appeals. We affirm.

I

On May 10, 2011, Officer Murray received information from an anonymous source that someone was growing marijuana plants in a back yard on the 300 block of South Jefferson Street in Mount Pleasant. Officer Murray's investigation led him to conclude the source had been referring to the only completely enclosed back yard on the block, which was associated with a house in which Mathias and his wife lived.[2]

Mathias's back yard was enclosed by a tall fence constructed of upright wooden slats spaced approximately a quarter-inch apart. After Officer Murray's initial attempts to view the enclosed area were unsuccessful, he contacted a neighbor living on the adjacent property to the north of Mathias's residence. Officer Murray obtained the neighbor's permission to walk along the neighbor's southern property line. Officer Murray was, however, unaware Mathias's fence was set approximately eighteen inches south of the property line. As a result, when walking along the north side of the fence, Officer Murray was actually physically trespassing along an eighteen-inch strip of grass and weeds on Mathias's property.

While on the strip, Officer Murray came within an inch of the fence and, without manipulating it, looked through the gaps in the fence into the back yard. There, he saw a number of potted, sprouting marijuana plants. Officer Murray then applied for and received a search warrant for Mathias, Mathias's wife, and their

_____

[2]In resolving the motion, the district court assumed the land was, as represented by Mathias, actually owned by Mathias's mother-in-law. Because Mathias resided in the house on the property, for ease of reference we refer to the land in question as belonging to Mathias.

residence. Upon execution of the warrant, police seized 277 marijuana plants, scales, packaging material, $1,400.00 in currency, and dried marijuana.

A federal grand jury indicted Mathias with one count of conspiring to manufacture marijuana. Mathias moved the court to suppress evidence arising from Officer Murray's observations, arguing the trespass and observation of the back yard had violated the Fourth Amendment.[3] The district court denied the motion, in pertinent part concluding the eighteen-inch strip of land was an open field for the purposes of the Fourth Amendment and Officer Murray's actions while on the strip had not violated the Fourth Amendment. Mathias then pleaded guilty pursuant to a plea agreement, conditioned on his right to appeal the denial of the motion to suppress.[4]

II

On appeal, Mathias argues the district court erred when it denied his motion to suppress. On review of a denial of a motion to suppress, we assess findings of fact for clear error and whether challenged actions violated the Fourth Amendment de novo. United States v. Inman, 558 F.3d 742, 745 (8th Cir. 2009).

Mathias contends Officer Murray violated his rights under the Fourth Amendment, arguing (1) the strip of land from which Officer Murray observed his

---

[3]Mathias also moved to suppress the search warrant as unsupported by probable cause. The district court also denied that portion of the motion. Mathias does not challenge the probable cause ruling on appeal.

[4]Mathias also filed an unsuccessful motion to reconsider. Although Mathias initially indicated he also intended to appeal the denial of his motion to reconsider, he failed to preserve the denial for appeal by not listing it as an issue or presenting any argument about it. See Hays v. Hoffman, 325 F.3d 982, 986 n.2 (8th Cir. 2003) (citing Fed.R.App.P. 28(a)(5)).

back yard was curtilage; and (2) Officer Murray's actions while on the strip constituted an unlawful search.

A

Mathias first contends the strip of land on which Officer Murray trespassed was curtilage and argues he had a reasonable expectation of privacy in the strip. The government urges us to review the district court's curtilage determination de novo. Although we acknowledge other circuits which have considered the standard of review after the Supreme Court issued Ornelas v. United States, 517 U.S. 690 (1996), apply de novo review, Eighth Circuit precedent requires us to review curtilage determinations for clear error. United States v. Wells, 648 F.3d 671, 676-77 (8th Cir. 2011) (citations omitted). Ultimately, however, the standard of review is immaterial to this issue because we would conclude under either standard that the strip of land constitutes an open field. See id.

"The Fourth Amendment protects the curtilage of an individual's residence, but not surrounding open fields." United States v. Boyster, 436 F.3d 986, 991 (8th Cir. 2006) (citing Hester v. United States, 265 U.S. 57, 59 (1924)). "Curtilage is the area to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life, and is typically comprised of land adjoining a house, often within some type of enclosure such as a fence." Id. (citations and internal quotation marks omitted). For the purposes of the Fourth Amendment, an open field may be any "unoccupied or undeveloped area outside of the curtilage" and "need be neither 'open' nor a 'field' as those terms are used in common speech." United States v. Dunn, 480 U.S. 294, 304 (1987) (quoting Oliver v. United States, 466 U.S. 170, 180 n.11 (1984)).

In assessing whether a particular area is curtilage, we determine "whether the area in question is so intimately tied to the home itself" that we should extend the

Fourth Amendment's protection to it. <u>Wells</u>, 648 F.3d at 677 (quoting <u>Dunn</u>, 480 U.S. at 301). We consider "factors that bear on whether an individual reasonably may expect that the area in question should be treated as the home itself." <u>Dunn</u>, 480 U.S. at 300 (quoting <u>Oliver</u>, 466 U.S. at 180). These factors are "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." <u>Id.</u> (citations omitted). The Supreme Court "identified the central component of this inquiry as whether the area harbors the intimate activity associated with the sanctity of a man's home and the privacies of life." <u>Id.</u> (citation and internal quotation marks omitted).

The balance of the <u>Dunn</u> factors weighs in favor of the area being an open field. The strip of land was close to Mathias's home, which weighs in favor of it being curtilage. The remaining factors, however, all weigh in favor of the strip being an open field. The strip of land was not included within Mathias's fence. In addition, there is no indication Mathias or his wife put the relatively undeveloped strip to uses associated with the sanctity of the home or privacies of life. Similarly, there is no indication Mathias made any efforts to protect the area from observation by passers-by as the strip of land remained open to view. Mathias's only argument is that the district court should have placed more significance on the proximity factor than the others. He, however, advances no persuasive grounds for doing so. We are convinced the strip constituted an open field for the purposes of the Fourth Amendment. Accordingly, the district court did not clearly err in so concluding.

B

Mathias next contends Officer Murray's actions while standing on the strip of land violated the Fourth Amendment. Although Mathias focuses his arguments primarily on Officer Murray's actions being a trespassory search under the rationale

of <u>United States v. Jones</u>, 132 S. Ct. 945 (2012), he also argues Officer Murray violated his reasonable expectation of privacy. Appellant's Br. 19.

## 1. Trespassory Search

Mathias's contention that Officer Murray's actions constituted a trespassory search under <u>Jones</u> cannot succeed. In <u>Jones</u>, the Supreme Court held a physical trespass for the purpose of gathering information constitutes a trespassory search prohibited by the Fourth Amendment. <u>Id.</u> at 951-53. A <u>Jones</u> trespassory search, however, requires the challenged intrusion to be into a constitutionally protected area enumerated within the text of the Fourth Amendment. <u>See id.</u> at 953 n.8 ("Thus, our theory is *not* that the Fourth Amendment is concerned with *any* technical trespass that led to the gathering of evidence. The Fourth Amendment protects against trespassory searches only with regard to those items . . . it enumerates.") (internal citation and quotation marks omitted). As Officer Murray was within an open field when he looked through Mathias's fence, his actions did not constitute a trespassory search. <u>See Oliver</u>, 466 U.S. at 176 (holding Fourth Amendment protection does not extend to open fields).

## 2. Reasonable Expectation of Privacy

The Supreme Court also made clear a challenged action may violate an individual's Fourth Amendment rights as either a trespassory search or a violation of a reasonable expectation of privacy. <u>See Jones</u>, 132 S. Ct. at 952 ("[T]he <u>Katz</u> reasonable-expectation-of-privacy test has been added to, not substituted for, the common-law trespassory test."). The question of whether a person has a constitutionally protected reasonable expectation of privacy in an area requires us to ask (1) whether the individual manifested a subjective expectation of privacy in the area; and (2) whether society is willing to recognize the expectation as reasonable. <u>California v. Ciraolo,</u> 476 U.S. 207, 211 (1986).

It is undisputed Mathias's backyard constituted curtilage. However, "[t]hat the area is within the curtilage does not itself bar all police observation." Id. at 213. Mathias's contentions regarding his expectation of privacy rest on two points, Officer Murray's trespass and the presence of the fence enclosing the backyard. We start by addressing the trespass.

In Dunn, the Supreme Court considered the case of two law-enforcement officers who had trespassed onto Dunn's land to shine flashlights into the interior of a barn protected by a locked gate. Id. at 297-98. The Court concluded the portion of Dunn's land on which the agents had trespassed constituted an open field for the purposes of the Fourth Amendment. Id. at 301. Assuming for the sake of argument the interior of the barn was protected by the Fourth Amendment, the Court reasoned no constitutional violation had occurred when law enforcement trespassed onto Dunn's land to reach their vantage point, where they merely stood and peered into the barn. Id. at 304. The Court concluded the Constitution did not forbid the agents from making their observations from their position in the open field. Id.

The same reasoning holds here. As in Dunn, a police officer simply observed a protected area—the backyard—from an unprotected one. Accordingly, Officer's Murray's trespass was not of constitutional significance. See id. ("[T]here is no constitutional difference between police observations conducted while in a public place and while standing in the open fields."); see also Oliver, 466 U.S. at 181 ("[A]n individual has no legitimate expectation that open fields will remain free from warrantless intrusion by government officers.").

We turn now to the fence. The presence of the fence is sufficient to establish that Mathias manifested a subjective expectation of privacy in the back yard. Accordingly, the only remaining question is whether society would recognize the expectation as reasonable. We conclude it would not. "[T]he mere fact that an individual has taken measures to restrict some views of his activities [does not]

preclude an officer's observations from a public vantage point where he has a right to be and which renders the activities clearly visible." Ciraolo, 476 U.S. at 213 (citing United States v. Knotts, 460 U.S. 276, 282 (1983)).

Here, Mathias's fence had gaps (albeit small ones) between the upright slats rendering the interior of the back yard visible to the naked eye of someone standing on the strip who took no steps to manipulate the fence. "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." Id. (quoting Katz v. United States, 389 U.S. 347, 351 (1967)); see also Wells, 648 F.3d at 678 (upholding the visual observation of items in a living room through an uncovered window). Accordingly, although Mathias had a subjective expectation of privacy in the back yard, the gaps in the fence, through which the back yard could be seen unaided, rendered the expectation not one society is willing to recognize as reasonable.

III

The judgment of the district court is affirmed.

_____