# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-1752

_____

United States of America

*Plaintiff - Appellee*

v.

Darnell Polite

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: October 24, 2018
Filed: December 6, 2018

_____

Before ERICKSON, BEAM, and GRASZ, Circuit Judges.

_____

ERICKSON, Circuit Judge.

Darnell Polite pled guilty in district court[1] to being an unlawful user of a controlled substance in possession of a firearm, in violation of 18 U.S.C. § 922(g)(3).

---

[1]The Honorable John M. Gerrard, United States District Court Judge for the District of Nebraska, adopting the Report and Recommendation of the Honorable Michael D. Nelson, United States Magistrate Judge for the District of Nebraska.

As a condition of his guilty plea, Polite reserved the right to argue on appeal that law enforcement officers violated his Fourth Amendment rights by performing a <u>Terry</u> stop without reasonable suspicion and arresting him without probable cause, and that all evidence obtained and statements made by Polite following his detention should be suppressed. We find law enforcement officers had reasonable suspicion to conduct a <u>Terry</u> stop and Polite's arrest was supported by probable cause. We affirm.

## I.    Background

At 10:30 p.m. on Halloween in 2016, while on routine patrol, two City of Omaha Police Department gang-unit officers saw a group of approximately 20 individuals standing in a parking lot and the adjacent sidewalk next to an apartment building. Officers were aware of the increasing presence of Crips gang members, including the 40th Ave., Hilltop, and 44th Ave. Crips, in this area. The apartment manager had requested increased police presence because of crime and gang activity occurring around the apartment complex. This area had been the location of narcotics and firearms investigations as well as homicides.

Upon seeing this group of people loitering about, City of Omaha police officers Mike Sundermeier ("Officer Sundermeier") and David Preston, Jr. ("Officer Preston") stopped the unmarked Dodge Magnum that they were driving while on patrol. They recognized some of those present as 40th Ave. and 44th Ave. Crips gang members. The officers were dressed in jeans and tactical vests marked with "Police" on both sides. The Dodge's red and blue lights were activated, at which point the group began to head in different directions, some fleeing and some stopping to talk to Officer Preston.

Officer Sundermeier, from a distance of about 30 feet away, saw Polite kneel down for approximately one second behind a parked blue Chevrolet Impala. As Polite knelt behind the Impala, Officer Sundermeier testified that he heard an object

-2-

hit the ground, which he described as a "metallic thump . . . metal-on-metal." Almost immediately after hearing the first sound, Officer Sundermeier testified that he heard another object hit the ground a short distance away from where four other group members were standing. He estimated that distance as about 40 feet away and described the second sound as metal or something heavy hitting the ground.

Officer Sundermeier detained Polite, believing he had just discarded a firearm. He handcuffed Polite and confiscated a cell phone that had been in Polite's possession. Officer Sundermeier then moved to the front of the Impala where Officer Sundermeier had seen Polite kneeling. Officer Sundermeier found a Makarov 9mm semi-automatic pistol in the grass between the sidewalk and the building. A second firearm wrapped in a blue bandana, which was not part of the charge in this case, was found in the location where Officer Sundermeier had testified that he heard the second sound of something hitting the ground. Thus, two firearms were recovered at the scene and Officer Sundermeier testified he heard both of them hit the ground. Officer Preston, 10 to 20 feet closer to Polite, heard neither of the firearms hit the ground.

Officer Sundermeier testified that on the night in question he recognized Polite from prior contacts. He testified that he knew Polite was under the age of 21 and that Polite had previously told him that he was a 40th Ave. Crips gang member.

Polite was transported to Central Headquarters to be interviewed. Once at the station, Polite was placed in an interrogation room and informed of his Miranda rights. Officer Preston questioned Polite for less than an hour. During questioning, Polite denied possession and knowledge of the 9mm handgun. He consented in writing to the collection of a DNA sample and to a search of his cell phone. Polite voluntarily provided the passcode for his cell phone. Among the phone's contents were photographs of the recovered 9mm handgun and marijuana. Polite eventually admitted to being a gang member and a marijuana user.

-3-

Polite was charged with possession of a firearm while being an unlawful user of, or addicted to, a controlled substance, in violation of 18 U.S.C. § 922(g)(3). Polite moved to suppress any statements he made and any evidence obtained from a buccal swab and the search of his cell phone on the grounds that he had been unlawfully detained without reasonable suspicion and arrested without probable cause. The magistrate judge held an evidentiary hearing and issued findings and a recommendation that Polite's motion be denied. The district judge overruled Polite's objections, adopted the magistrate judge's findings, and denied Polite's motion to suppress. Following the district court's denial of his motion to suppress, Polite entered a conditional guilty plea, reserving a right to appeal the denial of his motion to suppress. The court sentenced Polite to time served. This appeal followed.

## II.    Discussion

We review *de novo* the district court's denial of a motion to suppress evidence and "the factual determinations underlying the district court's decision for clear error." United States v. Harris, 747 F.3d 1013, 1016 (8th Cir. 2014). "We affirm unless the denial of the motion is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake was made." United States v. Gunnell, 775 F.3d 1079, 1083 (8th Cir. 2015) (quoting United States v. Douglas, 744 F.3d 1065, 1068 (8th Cir. 2014)).

Under Terry v. Ohio, an officer may stop an individual if the officer has reasonable suspicion that "criminal activity may be afoot." 39 U.S. 1, 30 (1968). A Terry stop is justified when a police officer is "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21; United States v. Davison, 808 F.3d 325, 329 (8th Cir. 2015). We determine whether reasonable suspicion exists based on "the totality of the circumstances, in light of the officer's experience." United

States v. Stigler, 574 F.3d 1008, 1010 (8th Cir. 2009) (quoting United States v. Banks, 553 F.3d 1101, 1104 (8th Cir. 2009)).

We find Officer Sundermeier had reasonable suspicion to conduct a Terry stop on Polite. Polite was loitering around on Halloween night among a group of 20 other people, some of whom were known Crips gang members. Polite and the others were in an area where criminal activity was occurring frequently. When the officers activated the patrol vehicle's emergency lights, the group headed in different directions, some to the east and some to the west. Some leaving the area and some stopping to talk to Officer Preston. Polite did not act in a manner consistent with the others. Officer Sundermeier saw Polite kneel in front of a parked car and then stand back up a second later. Polite's conduct was sufficient to give an officer reasonable suspicion that something criminal might be afoot.

In finding the existence of reasonable suspicion to support a Terry stop of Polite, we have purposefully disregarded Officer Sundermeier's testimony that he heard what he believed were two firearms hit the ground as well as his testimony that he knew Polite. Officer Sundermeier's testimony is incredible and implausible when considered along with the other undisputed evidence.

Officer Preston was 10 to 20 feet closer to Polite and he did not hear the sound of metal hitting the ground. Officer Preston described the scene of 20 people loitering and dispersing as somewhat chaotic. People were moving in different directions. People were talking. The notion that, under these circumstances, an officer could hear from 30 feet away a 9mm handgun fall on the grass, or be placed on the grass when Polite knelt down, is simply not credible or plausible. It is even more implausible that under the same circumstances an officer could hear a firearm wrapped in a bandana fall to the ground from approximately 40 feet away. Crediting this testimony was clearly erroneous.

Additionally, on the night of the incident, Polite was walking in the dark with his head down while wearing a hooded sweatshirt. After Officer Sundermeier handcuffed Polite, he said to a detective at the scene: "this guy over here dropped a gun." Officer Sundermeier neither identified Polite by name nor made an indication that he was familiar with Polite. It was not until an hour after the arrest when a crime lab technician asked Officer Sundermeier for the suspect's name that the officers made any effort to identify Polite. A video recording captured Officer Preston obtaining Polite's name from Polite while Officer Sundermeier was standing nearby. Officer Sundermeier asked Polite for his date of birth and the spelling of his last name. This recorded evidence is plainly inconsistent with Officer Sundermeier's testimony that at the time of the arrest, he knew Polite from prior contacts. The district court's reliance on Officer Sundermeier's testimony that he knew Polite, while clearly erroneous, does not make Polite's arrest unlawful.

In less than a minute after Polite was detained, a handgun was located where Officer Sundermeier saw Polite kneel down. The photographs of the firearm are consistent with Officer Sundermeier's testimony that the firearm did not appear to have been in the grass for very long. Polite was 18 years old. Section 20-204(a) of the Omaha Municipal Code provides, in relevant part: "Any person who has not reached the age of 21 who possesses a concealable firearm . . . commits the offense of unlawful possession of a concealable firearm." Officer Sundermeier could reasonably believe Polite looked under the age of 21.

Furthermore, Nebraska law prohibits the carrying of a concealed weapon unless the individual is a valid permit holder under the Concealed Handgun Permit Act. Neb. Rev. Stat. § 28-1202. Applicants for a permit under the Concealed Handgun Permit Act must be at least 21 years old. Neb. Rev. Stat. § 69-2433. Officer Sundermeier testified that prior to Polite ducking down below the vehicle, he did not appear to have anything in his hands. Officer Sundermeier could reasonably believe the gun had been concealed prior to Polite discarding it as he approached. In light of

these facts, Officer Sundermeier had probable cause to arrest Polite for illegally possessing a firearm.

### III.   Conclusion

After setting aside the testimony from Officer Sundermeier that was clearly incredible and implausible, we find there remains sufficient evidence to support a conclusion that the <u>Terry</u> stop was justified and that Polite's arrest was lawful.  The district court did not err in denying Polite's motion to suppress his statements and all evidence obtained following the detention.  See <u>United States v. Cotter</u>, 701 F.3d 544, 548 (8th Cir. 2012) ("Because the <u>Terry</u> stop was proper, the district court also did not err in refusing to suppress . . . [the] confession, as it was not the fruit of the poisonous tree.").  We affirm the district court.

_____