# United States Court of Appeals
### For the Eighth Circuit

_____

No. 18-1516
_____

United States of America

*Plaintiff - Appellee*

v.

Alvin Antonio Houston

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: January 18, 2019
Filed: April 10, 2019

_____

Before GRUENDER, WOLLMAN, and SHEPHERD, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Alvin Antonio Houston pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The district court[1] applied a four-level enhancement for possession of a firearm in connection with

---

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

another felony and sentenced Houston to thirty-six months' imprisonment. Houston appeals the denial of his motion to suppress evidence and the application of the sentencing guidelines' enhancement. We affirm.

## I.

Shortly after 1:00 a.m. on February 8, 2017, the Davenport Police Department dispatched three officers in response to a neighborhood disturbance call. The Davenport Police Department had recently responded to other neighborhood disturbance calls and shots-fired calls in the area. The neighborhood to which they were called was within a 20-block-by-6-block area that accounted for nearly one third of confirmed shots-fired calls for the Davenport Police Department between January 2017 and September 2017.

When the officers arrived, they spotted Houston with their flashlights. He looked at them and then ran. One officer commanded him to "wait," but Houston kept running. Another officer observed a black pistol in Houston's hand and told the others. The officers chased Houston to the backyard of his home, drew their weapons, and again commanded him to stop. He eventually complied and was detained. One officer patted down Houston and felt something metallic in his pants pocket. Unsure what it was, the officer reached into the pocket and removed a set of brass knuckles. At that point, the officers planned to arrest Houston for possession of brass knuckles in violation of Iowa Code section 724.4(1), which makes "go[ing] armed with a dangerous weapon concealed on or about the person" an aggravated misdemeanor. The officers then removed other things from Houston's pockets such as a "relatively small knife," a bottle of alcohol, and a cell phone.

After Houston was detained and searched, the officers found a black pistol in a ravine just beyond the property line of Houston's residence. The pistol was the same size and color as the one the officer had observed in Houston's hand. The officers placed Houston in a patrol car, checked his criminal history, and discovered

that he had a prior felony conviction. Houston was indicted for being a felon in possession of a firearm.

Houston moved to suppress the pistol as well as the brass knuckles and other items taken from his pocket, claiming violations of the Fourth Amendment. The district court denied the motion. Houston pleaded guilty but reserved the right to appeal the denial of his motion to suppress. *See* Fed. R. Crim. P. 11(a)(2). At sentencing, the district court applied U.S.S.G. § 2K2.1(b)(6)(B) and imposed a four-level enhancement because Houston "[u]sed or possessed any firearm or ammunition in connection with another felony offense." The district court reasoned that Houston committed both the crime of being a felon in possession of a firearm under 18 U.S.C. §§ 922(g)(1) and 924(a)(2) and the qualifying aggravated misdemeanor of carrying a dangerous weapon—the pistol—under Iowa Code section 724.4(1).[2]

## II.

"On appeal from the denial of a motion to suppress, we review the district court's factual findings for clear error and its conclusions of law de novo." *United States v. Bearden*, 780 F.3d 887, 892 (8th Cir. 2015). "We affirm unless the denial of the motion is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake was made." *Id.*

Houston first contends that he was seized under the Fourth Amendment when an officer commanded him to "wait." This alleged seizure, he claims, violated the

---

[2] The Commentary to U.S.S.G. § 2K2.1(b)(6)(B) defines "another felony offense" as "any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." In Iowa, an aggravated misdemeanor is "another felony offense" because it is punishable by imprisonment for a term of up to two years. *See* Iowa Code § 903.1(2); *United States v. Anderson*, 339 F.3d 720, 724 (8th Cir. 2003).

Fourth Amendment because it was not supported by a reasonable suspicion of criminal activity. But it is well established that "police pursuit in attempting to seize a person does not amount to a 'seizure' within the meaning of the Fourth Amendment." *United States v. Taylor*, 462 F.3d 1023, 1026 (8th Cir. 2006); *see also California v. Hodari D.*, 499 U.S. 621, 626 (1991) ("[The Fourth Amendment] does not remotely apply . . . to the prospect of a policeman yelling 'Stop, in the name of the law!' at a fleeing form that continues to flee. That is no seizure."). Thus, because Houston did not submit when the officer commanded him to "wait," there was no seizure, and the Fourth Amendment does not apply. *See Hodari D.*, 499 U.S. at 629 (concluding that a defendant was seized when an officer tackled him after a pursuit, not when the officer first instructed him to halt); *Taylor*, 462 F.3d at 1026 (concluding that a defendant was not seized when he stopped his car and fled from officers on foot).

Houston next argues that the seizure of items from his pockets after he was detained was unconstitutional. Under *Terry v. Ohio*, an officer may stop an individual if the officer has reasonable suspicion that "criminal activity may be afoot." 392 U.S. 1, 30 (1968). A *Terry* stop is justified when a police officer is "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21. "We determine whether reasonable suspicion exists based on the totality of the circumstances, in light of the officer's experience." *United States v. Polite*, 910 F.3d 384, 387 (8th Cir. 2018) (internal quotation marks omitted).

Houston's flight from the officers in an area known for gun-related crime was sufficient to justify a reasonable suspicion of criminal activity. *See Illinois v. Wardlow*, 528 U.S. 119, 124-25 (2000) (concluding that a suspect's flight upon seeing police officers while in a high-crime area justified a *Terry* stop). That the confrontation occurred in the middle of the night and that one officer previously observed a pistol in Houston's hand further indicate that the officers had a reasonable suspicion of criminal activity and were justified in stopping Houston. *See United*

*States v. Dawdy*, 46 F.3d 1427, 1429 (8th Cir. 1995) (stating that "[f]actors that may reasonably lead an experienced officer to investigate include time of day or night"); *United States v. Robinson*, 670 F.3d 874, 877 (8th Cir. 2012) (concluding that it was reasonable for officers to suspect that a defendant might use a firearm when he was spotted with one in his hand nearby the scene of a recent altercation).

After a suspect is lawfully stopped, an officer may conduct a pat-down search for weapons if that officer has a reasonable, articulable suspicion that the suspect is armed and dangerous. *United States v. Trogdon*, 789 F.3d 907, 910 (8th Cir. 2015). Because one officer told the others that he saw Houston holding a pistol, the officers had a reasonable, articulable suspicion that Houston was armed and dangerous. Thus, they were entitled to conduct a pat-down search. While conducting the pat-down search, one officer felt a hard, metallic object in Houston's front pocket and could not rule out the possibility that it was a weapon. The removal of that object—the brass knuckles—from Houston's pocket was therefore lawful. *See United States v. Hanlon*, 401 F.3d 926, 930 (8th Cir. 2005) (upholding a *Terry* frisk and subsequent retrieval when an officer felt a small, hard object in the suspect's pocket and testified he could not rule out the possibility it was a weapon).

The district court determined that after the discovery of the brass knuckles, the officers had probable cause to arrest Houston for carrying a dangerous weapon—the brass knuckles—under Iowa Code section 724.4(1). Based on this determination, the district court concluded that the seizure of other objects from Houston's pockets was lawful as a search incident to arrest. On appeal, Houston claims that whether the brass knuckles are a "dangerous weapon" under Section 724.4(1) is an issue of fact for the district court to determine. *See State v. Eaton*, 868 N.W.2d 881(Iowa Ct. App. 2015) (vacating a sentence imposed for violation of Iowa Code section 724.4(1) "[b]ecause nothing in the record shows the brass knuckles in question were capable of inflicting death on a human being"). He seems to argue that because brass knuckles are not *per se* dangerous weapons under section 724.4(1), the officers did not have probable cause to arrest him for possessing brass knuckles. But the question whether the officers had

probable cause to arrest Houston for possessing a potentially dangerous weapon is distinct from the question of whether those brass knuckles were sufficiently dangerous to support a conviction under 724.4(1). Moreover, even if the district court erred by failing to suppress the objects found in Houston's pocket, that error was harmless because none of those objects related to the crime for which he was ultimately charged—possessing the pistol found in the ravine. *See United States v. Martinez*, 462 F.3d 903, 910 (8th Cir. 2006) ("An error is harmless if it does not affect substantial rights of the defendant, and did not influence or had only a slight influence on the verdict.").

Finally, Houston claims that the district court erred by not suppressing the pistol found in the ravine. The district court determined that Houston lacked standing to challenge the seizure of the pistol because he abandoned it by leaving it in the ravine. On appeal, Houston acknowledges that he does not have a protected privacy interest in abandoned property, *see United States v. Tugwell*, 125 F.3d 600, 602 (8th Cir. 1997), but claims that the ravine constituted curtilage to his home and the officer's warrantless search for the pistol was therefore unconstitutional. "In assessing whether a particular area is curtilage, we determine whether the area in question is so intimately tied to the home itself that we should extend the Fourth Amendment's protection to it." *United States v. Mathias*, 721 F.3d 952, 956 (8th Cir. 2013) (internal quotation marks omitted). The district court found that the ravine was beyond the property line of Houston's residence and that one officer had to walk into a wooded area past a section of a fence bordering Houston's yard to retrieve the pistol. Based on these findings, which were not clearly erroneous, the ravine did not constitute curtilage to Houston's home. *See United States v. Douglas*, 744 F.3d 1065, 1071 (8th Cir. 2014) ("A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." (quoting *Rakas v. Illinois*, 439 U.S. 128, 134 (1978))). Thus, the officer's search for and ultimate seizure of the pistol did not implicate Houston's Fourth Amendment rights, and the district court properly denied Houston's motion to suppress.

## III.

"We review the district court's construction and application of the sentencing guidelines de novo, and we review its factual findings regarding enhancements for clear error." *United States v. Cordy*, 560 F.3d 808, 817 (8th Cir. 2009). Houston challenges the district court's application of U.S.S.G. § 2K2.1(b)(6)(B), which provides that "[i]f the defendant . . . used or possessed any firearm or ammunition in connection with another felony offense . . . increase by 4 levels." Houston argues that the qualifying offense of carrying a dangerous weapon under Iowa Code section 724.4(1) is not "another felony" under U.S.S.G. § 2K2.1(b)(6)(B) because he could not commit the crime of being a felon in possession of a firearm without also committing the Iowa offense. *See United States v. Lindquist*, 421 F.3d 751, 756 (8th Cir. 2005) (considering the application of U.S.S.G. § 2K2.1(b)(5) and explaining that "[i]t would be unreasonable . . . to allow the 'additional felony' to be an offense that the defendant has to commit, in every case, in order to commit the underlying offense"), *abrogated on other grounds as recognized in United States v. Steward*, 598 F.3d 960, 962-63 (8th Cir. 2010). But, as Houston concedes, we already considered and rejected his argument with respect to section 724.4(1). *See United States v. Walker*, 771 F.3d 449, 452-53 (8th Cir. 2014) (concluding that the application of U.S.S.G. § 2K2.1(b)(6)(B) to a defendant whose possession of a firearm violated both Iowa Code section 724.4(1) and 18 U.S.C. § 922(g) "does not implicate the 'double counting' concerns underlying our decision in *Lindquist*"), *cert denied*, 135 S.Ct. 1538 (2015). Because *Walker* controls, we affirm the district court's application of the four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B).

## IV.

For the foregoing reasons, we affirm the denial of Houston's motion to suppress and the application of the sentencing guidelines' enhancement.

_____