# United States Court of Appeals
### For the Eighth Circuit

_____

No. 22-3247
_____

United States of America,

*Plaintiff - Appellee,*

v.

Melchizedek Robin Hayes,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: April 12, 2023
Filed: July 31, 2023

_____

Before COLLOTON, WOLLMAN, and GRUENDER, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Melchizedek Hayes pleaded guilty to unlawful possession of a firearm as a prohibited person. *See* 18 U.S.C. §§ 922(g)(1), (9), 924(a)(2). He argues that the

district court[*] erred when it denied his motion to suppress evidence seized during a search of his home. We conclude that there was no error in admitting the evidence, and affirm the judgment.

I.

Beginning in December 2020, Hayes's stepfather, Michael Richards, became concerned about Hayes's mental health. Hayes exhibited paranoid behavior, began to miss work, and eventually lost his job. In April 2021, Richards filed mental health commitment papers after Hayes expressed an intent to commit suicide, but Hayes left two mental health facilities without receiving treatment. On May 18, 2021, Hayes expressed suicidal thoughts, stating that "I may as well just blow myself up."

One day later, Richards, who lived across the street from Hayes, noticed that the front door to Hayes's house was open. Richards knew that Hayes had departed the home and was not inside. He also knew from experience that it was unusual for Hayes to leave his door open. Richards and another son entered the house, and found three Molotov cocktails, glass bottles, gasoline, and rags under a sink in a bathroom.

Richards called 911 to report what he found, and explained that he believed Hayes posed a danger to himself and others. Richards also told the dispatcher that his family owned the house. When police officers arrived on the scene, Richards told them that "[o]ur family lives across the road." Richards then led the officers into the house. Once inside, Richards directed the officers toward the bathroom where he had discovered three Molotov cocktails, gasoline, bottles, and rags. An officer photographed the items in the bathroom.

---

[*]The Honorable C.J. Williams, United States District Judge for the Northern District of Iowa, adopting the report and recommendation of the Honorable Mark A. Roberts, United States Magistrate Judge for the Northern District of Iowa.

The officers then asked Richards how he had access to the house. Richards explained that he owned the property through his family business. Richards stated that he entered the house to perform a "safety inspection" after Hayes made threats to burn down the house and to kill family members.

Officers continued to look through the house, and an officer found another Molotov cocktail in the kitchen. The officers seized the Molotov cocktails found in the bathroom and kitchen. Investigators determined that all four items were explosive devices. Under federal law, the term "firearm" includes "any destructive device," which includes explosive devices. 18 U.S.C. § 921(a).

A grand jury charged Hayes with unlawful possession of a firearm. *See id.* §§ 922(g)(1), (9), 924(a)(2). Hayes moved to suppress the evidence seized from his house. The district court concluded that the officers did not violate the Fourth Amendment, and denied the motion. Hayes entered a conditional guilty plea and reserved his right to appeal the denial of the motion to suppress. *See* Fed. R. Crim. P. 11(a)(2). The district court sentenced Hayes to a term of twenty-six months' imprisonment, followed by three years of supervised release.

II.

Hayes argues that the district court erred in denying his motion to suppress evidence. We conclude that the search of Hayes's house was permissible without a warrant, because the police officers reasonably relied on the apparent authority of Richards to consent to the search. Once the officers were present within the residence, the seizure of evidence was lawful because the items taken were in plain view.

Warrantless searches of a person's home are generally prohibited under the Fourth Amendment unless an exception to the warrant requirement applies. *Illinois*

*v. Rodriguez*, 497 U.S. 177, 181 (1990). One exception allows police officers to search a home without a warrant if a third party who has common authority over the premises consents to the search. *United States v. Matlock*, 415 U.S. 164, 171 (1974). Common authority rests on mutual use of the property or joint access or control of the premises. *Id*. at 171 n.7.

Whether or not a third party actually possessed common authority, a warrantless search is justified "when an officer reasonably relies on a third party's demonstration of apparent authority." *United States v. Amratiel*, 622 F.3d 914, 915 (8th Cir. 2010). Apparent authority exists if "the facts available to the officer at the moment . . . warrant a man of reasonable caution in the belief that the consenting party had authority over the premises." *Rodriguez*, 497 U.S. at 188 (internal quotations omitted).

Given the facts available to the officers, we conclude that it was reasonable to believe that Richards had authority to consent to the search of Hayes's house. It is reasonable for police officers to "form their impressions from context," and the Fourth Amendment does not "require police to go behind appearances to verify third party authority." *United States v. Almeida-Perez*, 549 F.3d 1162, 1171 (8th Cir. 2008).

When the officers were dispatched to the residence, they received information that Richards was the father of the resident, that the resident was experiencing a mental health crisis for which he recently had been committed, and that Richards had just entered the house and found "bomb-making material." When officers arrived, they saw Richards waiting outside the residence. Richards told the officers that he lived across the street, and led them into the house without knocking or asking permission of anyone inside. By these communications and actions, Richards implied that he possessed common authority over the residence, and it was reasonable for the officers to believe without further inquiry that Richards could consent to their entry.

Once inside, Richards informed the officers that he owned the house through his family company, and that he was allowing Hayes to live at the residence while the stepson was unemployed. Richards's other son told the officers that they were concerned about Hayes's mental health and welfare, because he had threatened to destroy the house and to harm himself and family members. Richards also told the officers that he entered the house through the unlocked door to perform a "safety inspection."

Hayes argues that it was unreasonable for the officers to believe that Richards could consent to a search of the house based on his ownership of the property through his family business. He asserts that further investigation would have established that Richards was not an owner of the corporation, and that a landlord cannot give consent to search a tenant's property in any event.

Insofar as discussions inside the residence are relevant to the reasonableness of ongoing police activity in the house, we conclude that the facts continued to support a reasonable belief that Richards had joint access or control over the residence. Richards told officers that he owned the residence through a family business, and that he allowed the unemployed Hayes, a stepson, to live at the house. Officers observed Richards exercise privileges that would be proper only for a person with authority over the house, including entry on his own initiative for the purpose of conducting a safety inspection. Under the totality of the circumstances, it was reasonable for the officers to believe that the situation did not present a typical landlord-tenant relationship. Rather, the officers reasonably could have concluded that Richards had authority to consent to a search based on his purported ownership of the property, *see United States v. Brokaw*, 985 F.2d 951, 954 (8th Cir. 1993), his familial relationship with Hayes, *see United States v. Weston*, 443 F.3d 661, 668 (8th Cir. 2006), and his unfettered entry into the house before and after officers arrived.

Officers may seize an effect without a warrant under the "plain view doctrine" if they are lawfully present in a place to view the object, the incriminating character of the object is immediately apparent, and the officers have a lawful right of access to the object. *Horton v. California*, 496 U.S. 128, 136-37 (1990). Once the officers were lawfully present in Hayes's house based on Richards's apparent authority to consent, the officers permissibly seized the Molotov cocktails as objects in plain view in the bathroom and kitchen. *See United States v. Varner*, 481 F.3d 569, 572-73 (8th Cir. 2007). Hayes suggests that even if the police officers were lawfully present in his home, and the incriminating character of the explosive devices was immediately apparent, the officers were required to obtain a warrant before making a seizure. But "[w]here the elements of the plain view doctrine are met, the fact that the officers could have left and obtained a warrant does not invalidate the justification for seizing the property." *PPS, Inc. v. Faulkner County*, 630 F.3d 1098, 1106 (8th Cir. 2011). The district court did not err when it concluded that the officers lawfully seized the items from Hayes's bathroom and kitchen.

For these reasons, the district court did not err in denying the motion to suppress, and the judgment is affirmed.

_____