# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-2753
_____

United States of America

*Plaintiff - Appellee*

v.

Lorenzo Devon Lemons, Sr.

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Northern District of Iowa - Eastern
_____

Submitted: September 22, 2023
Filed: October 18, 2023 (Corrected: October 18, 2023)
_____

Before SMITH, Chief Judge, MELLOY and ERICKSON, Circuit Judges.
_____

ERICKSON, Circuit Judge.

Lorenzo Devon Lemons, Sr., was charged with possessing a firearm by a prohibited person, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), after law enforcement discovered a gun on him during an investigatory stop. Lemons moved to suppress the firearm, claiming the officers' mistaken belief that he was a wanted fugitive nine inches taller than him rendered the stop unreasonable. The district

court[1] denied his motion and sentenced him to a term of 37 months' imprisonment. Because reasonable suspicion of criminal activity independent of the mistaken identification justified the detention, we affirm.

## I.     BACKGROUND

On September 13, 2021, Dubuque, Iowa police officers Benjamin Goerdt and Calvin Harridge ("Officers") conducted surveillance of an apartment belonging to the girlfriend of wanted fugitive Christopher Williams. Williams, who had outstanding arrest warrants, had led police on a high-speed chase the day before and crashed his vehicle. He later escaped from the hospital in a car registered to his girlfriend. Police records described Williams as a six-foot-tall African American male in his twenties with a stocky build, full head of hair, and a beard that wrapped around his face.

At 12:30 a.m., the Officers parked their unmarked police vehicle half a block away from Williams's girlfriend's apartment. The apartment was located on the second floor of the building and accessible by an outside staircase. At the beginning of the Officers' 90-minute surveillance, they noticed multiple men standing on a porch at the top of the staircase, including Lemons. Lemons is a five-foot-three African American male in his twenties with a stocky build, full head of hair, and a goatee. The Officers immediately focused on Lemons due to his build and facial hair, and because he was "acting as if . . . [he] didn't want to be noticed."

Around 12:47 a.m., a marked squad car drove past the apartment. Lemons reacted by going inside the apartment and turning off the lights. When the squad car left, Lemons came back outside. The Officers surveilled Lemons for another hour, watching him and his colleagues move between the porch, staircase, sidewalk, and a neighboring residence. Despite their use of binoculars, the Officers testified that

---

[1]The Honorable C.J. Williams, United State District Judge for the Northern District of Iowa.

their surveillance was partially obscured by the apartment porch's railing, parked cars, and the darkness of the early morning.

At 1:48 a.m., the Officers drove past Lemons and his colleagues on the sidewalk to get a better look. As they passed, Lemons peeked his head over the top of a parked van and stared at the Officers. The Officers drove around the block and, after some discussion, decided that Lemons was Williams. They approached him in their vehicle intending to detain him.

At 1:50 a.m., Officer Harridge activated the police car's emergency lights in front of the apartment and Officer Goerdt exited the vehicle. Lemons immediately began to run across the street. Officer Goerdt ran after Lemons, shouting for him to stop and get on the ground. Officer Harridge followed close behind. Lemons soon yielded, dropping to his stomach in a grassy area across from the apartment. As the Officers struggled to apprehend Lemons, he repeatedly yelled that he was not Williams and resisted being handcuffed. Lemons also pushed his waist into the ground causing the Officers to suspect that he might be hiding a weapon.

By this time, Officer Gary Pape (also a Dubuque police officer) arrived at the scene. A bystander who had been with Lemons approached Officer Pape and told him that Lemons had the bystander's legally registered gun on him. Officer Pape then pulled a handgun from the front of Lemons's waistband. The Officers finally handcuffed Lemons and got him to his feet at 1:54 a.m. Once Lemons was on his feet, the Officers were able to determine that he was not Williams. Lemons was arrested for interference with official acts.

After he was indicted for being a felon in possession of a firearm, Lemons moved to suppress the firearm. Following a hearing, the magistrate judge issued a report and recommendation denying the motion, which the district court adopted with minor modifications. Lemons pled guilty pursuant to a conditional plea preserving his right to appeal the district court's denial of his suppression motion. The appeal followed.

-3-

## II. DISCUSSION

A denial of a motion to suppress is reviewed *de novo* and the factual determinations underlying the court's decision are reviewed for clear error. United States v. Polite, 910 F.3d 384, 386 (8th Cir. 2018). We may affirm on any ground supported by the record. United States v. Murillo-Salgado, 854 F.3d 407, 414 (8th Cir. 2017).

Lemons contends the Officers' mistaken identification of him as Williams was unreasonable, rendering the stop invalid. We need not decide whether the Officers had reasonable suspicion that Lemons was Williams because the Officers had sufficient independent reasonable suspicion of criminal activity to detain Lemons.

If a law enforcement officer has reasonable and articulable suspicion that criminal activity is afoot, he may conduct a brief investigatory stop. Haynes v. Minnehan, 14 F.4th 830, 835 (8th Cir. 2021). "[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." Scott v. United States, 436 U.S. 128, 138 (1978).

In evaluating whether an officer has reasonable suspicion, we consider the totality of the circumstances in light of the officer's experience. Polite, 910 F.3d at 387. Relevant factors include "time of day or night, location of the suspect parties, and the parties' behavior when they become aware of the officer's presence." United States v. Dawdy, 46 F.3d 1427, 1429 (8th Cir. 1995). "[N]ervous, evasive behavior," and unprovoked flight are also highly pertinent. Illinois v. Wardlow, 528 U.S. 119, 124 (2000) (determining presence in a high-crime area coupled with unprovoked flight upon seeing police constituted reasonable suspicion of criminal activity).

Here, the Officers had sufficient evidence to establish reasonable suspicion justifying Lemons's detention. First, time of the encounter. It was 12:30 a.m. when the Officers began their surveillance, and they detained Lemons at approximately 1:50 a.m. Second, the encounter took place in a high-crime area. The Officers were aware of multiple reports of subjects in that neighborhood with firearms, and the apartment Lemons freely entered was associated with an armed and dangerous fugitive. Third, Lemons's behavior when he became aware of law enforcement's presence. Upon noticing another police car, Lemons disappeared into Williams's girlfriend's apartment, extinguished the lights, and only returned when the vehicle left. Officer Goerdt testified to the suspicious nature of this behavior.

Moreover, Officer Harridge described Lemons's action of staring at the Officers when they conducted their own drive-by as "hypervigilant" and indicative that Lemons was "watching . . . [his] back." Most important is Lemons's unprovoked flight when the Officers approached on foot. Even if it only lasted a few seconds, such flight constituted the "consummate act of evasion," Wardlow, 528 U.S. at 124, and Lemons provided no innocent explanation for it. In Wardlow, the Supreme Court decided that unprovoked flight and presence in a high-crime area alone were sufficient to establish reasonable suspicion. Here, we have the facts present in Wardlow plus Lemons's additional furtive behavior. The totality of the circumstances established reasonable suspicion of criminal activity sufficient to detain Lemons.

While Lemons also argues that his continued detention was unreasonable once he was on the ground and it was obvious that he was not Williams, because Lemons's initial detention was based on independent reasonable suspicion of criminal activity, the Officers' mistaken identification does not invalidate Lemons's continued detention. Furthermore, once Lemons was on his stomach, his evasive action of pushing his waist into the ground to hide the firearm and his continued failure to cooperate with the Officers justified prolonging the stop.

## III. CONCLUSION

For the foregoing reasons, we affirm the district court's denial of Lemons's motion to suppress the firearm.

_____