# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 24-1668

———————————————

Rene Valdivia; Alexis Free

*Plaintiffs - Appellants*

v.

Derek Porsch; Gabriel Christensen; Derick Seaton; Coby Gust; Todd Johnson; City of Audubon, Iowa; Audubon County, Iowa

*Defendants - Appellees*

——————————

Appeal from United States District Court
for the Southern District of Iowa - Western

——————————

Submitted: September 16, 2025
Filed: January 6, 2026

——————————

Before LOKEN, KELLY, and ERICKSON, Circuit Judges.

——————————

KELLY, Circuit Judge.

After Rene Valdivia and Alexis Free were charged in state court with several criminal offenses, they moved to suppress evidence seized at the time of their arrest. The state court granted the motions, and all charges were dismissed. Valdivia and Free then sued the arresting officers and others pursuant to 42 U.S.C. § 1983 and

state law. The district court[1] granted the defendants' motions for summary judgment, and Valdivia and Free appeal. We affirm.

## I.

On October 8, 2022, Officer Porsch was on night patrol when he noticed a car without an operating license plate light driving in the opposite direction. He made a U-turn to follow it, but he did not activate his emergency lights. After a few turns, Porsch saw the car pull over on a residential street, at which point a person—later identified as Free—got out from the passenger side and began to run. Porsch pulled up next to the driver's side of the car and spoke to the driver—a man later identified as Valdivia. When Porsch asked why the passenger ran, Valdivia said she wanted to see a sick aunt.

Porsch then drove away to look for the passenger, circling the block. Returning to where he saw her run from the car, Porsch got out of his squad car to ask a nearby resident whether anyone had come to his home. The resident said no. Porsch then saw Valdivia standing on the sidewalk and asked him for his identification. As he handed Porsch his driver's license, Valdivia admitted it was suspended. Valdivia also told Porsch he had not been driving but had switched seats with the passenger. Porsch responded by saying he knew Valdivia was driving because he saw him in the driver's seat and saw Free "get out of the passenger seat." He also told Valdivia, "We need to find her, because that was weird."

Porsch asked Valdivia if there was "anything illegal" in the car, and Valdivia said no. Porsch then asked for the registration and insurance. Valdivia said the car was not his, but he would try to get his friend to send copies over the phone. Porsch walked to the car, shined a flashlight through the passenger-side window, and said, "There's marijuana in there." Valdivia repeated that it was not his car.

---

[1]The Honorable Stephen H. Locher, United States District Judge for the Southern District of Iowa.

Meanwhile, Deputies Derick Seaton and Gabriel Christensen arrived. Porsch again told Valdivia they needed to find the passenger, and Christensen asked for her name. Valdivia responded that he did not "need to tell [them] her name." Valdivia tried to reach Free by phone, but she did not answer. After patting him down, Porsch told Valdivia he was being detained, handcuffed him, and placed him in the back of his squad car.

Seaton then went on foot to look for the passenger. After several minutes, Valdivia offered to help and called out for her. A few minutes later, Seaton found her, and she was detained, handcuffed, and escorted to his squad car. When asked, Free refused to give her name. The officers then searched the car and found marijuana, methamphetamine, and drug paraphernalia. They also found a social security card in the name of Alexis Free, who was then identified as the passenger.

After all state criminal charges against them were dismissed, Valdivia and Free filed this § 1983 action, alleging violations of their Fourth Amendment rights and of state law. The district court granted the defendants' motions for summary judgment. On appeal, Valdivia and Free assert that the district court erred in concluding Porsch and Seaton were entitled to qualified immunity on the federal claims against them.[2] We address each claim in turn.

II.

A.

We review a grant of summary judgment based on qualified immunity *de novo*. Michael v. Trevena, 899 F.3d 528, 531 (8th Cir. 2018). In doing so, we view the record in light most favorable to the non-moving party and draw all inferences in their favor. Id. at 532. A state official is entitled to qualified immunity unless: "(1)

---

[2]Valdivia and Free do not appeal the grant of summary judgment on any other claim or for any other defendant; nor do they appeal the district court's decision to decline to exercise supplemental jurisdiction over some of the state law claims.

he violated a constitutional right, and (2) that constitutional right was clearly established so that a reasonable officer would know of the right at the time of the alleged violation." Thurairajah v. City of Fort Smith, 925 F.3d 979, 982 (8th Cir. 2019) (citing Pearson v. Callahan, 555 U.S. 223, 232 (2009)).

B.

First, Valdivia argues that Porsch lacked reasonable suspicion to detain him while he and the other officers searched for Free. "Law enforcement officers may make an investigatory stop if they have a reasonable and articulable suspicion of criminal activity." United States v. Hightower, 716 F.3d 1117, 1119 (8th Cir. 2013) (quoting United States v. Bustos-Torres, 396 F.3d 935, 942 (8th Cir. 2005)). "In determining whether [Porsch] possessed reasonable suspicion to conduct a temporary investigative detention, or 'Terry stop,' [we] look only at the information [Porsch] possessed at the time." Waters v. Madson, 921 F.3d 725, 736 (8th Cir. 2019) (first citing Terry v. Ohio, 392 U.S. 1, 21–22 (1968); and then citing Graham v. Connor, 490 U.S. 386, 396 (1989)). Even if "we determine that [Porsch] lacked reasonable suspicion and thus conducted an unlawful Terry stop, []he may nonetheless be entitled to qualified immunity if []he had *arguable* reasonable suspicion—that is, if a reasonable officer in the same position could have believed []he had reasonable suspicion." Id. (citing De la Rosa v. White, 852 F.3d 740, 745–46 (8th Cir. 2017)). Reasonable suspicion requires "something more than an 'inchoate and unparticularized suspicion or hunch[,]'" id. (quoting Terry, 392 U.S. at 27), and is assessed based on the totality of the circumstances, United States v. Lemons, 84 F.4th 766, 769 (8th Cir. 2023) ("In evaluating whether an officer has reasonable suspicion, we consider the totality of the circumstances in light of the officer's experience.").

Porsch had, at a minimum, arguable reasonable suspicion. By the time Porsch detained Valdivia, he had seen Free get out of the passenger side of the car and run away, in the dark of night. Porsch told Valdivia that he found this behavior "weird" and "suspicious." Valdivia said Free was going to see a sick aunt or her mom, but

when Porsch returned after circling the block, Valdivia was still there. Based on this information, Porsch was concerned that he had come upon a "rolling domestic"—that is, a domestic dispute that was occurring in the car. See Lemons, 84 F.4th at 769 (identifying "time of day or night" and "the parties' behavior when they become aware of the officer's presence," including "evasive behavior" and "unprovoked flight," as factors to consider in determining whether an officer has reasonable suspicion based on the totality of the circumstances).

Valdivia counters that Porsch's inability to articulate a specific crime he suspected had been, or was about to be, committed means he lacked reasonable and articulable suspicion. See Waters, 921 F.3d at 736. Even if Porsch was required to identify a specific crime, he did so here. Given Free's flight, Valdivia's "sick aunt" explanation, and Valdivia's continued presence in the area—neither joining Free to visit her aunt nor leaving after dropping Free off—Porsch had arguable reasonable suspicion to believe Free was fleeing a domestic dispute. See Lemons, 84 F.4th at 769. The district court did not err in granting summary judgment to Porsch on this claim.

C.

Next, Valdivia and Free argue that Porsch and Seaton conducted an unconstitutional warrantless search of the car. Warrantless searches "are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." United States v. Evans, 830 F.3d 761, 765–66 (8th Cir. 2016) (quoting Coolidge v. New Hampshire, 403 U.S. 443, 454–55 (1971) (plurality opinion)). The exception at issue here is "the plain view doctrine." See id. at 766. Under this exception, officers may seize contraband without a warrant "if they are lawfully present in a place to view the object, the incriminating character of the object is immediately apparent, and the officers have a lawful right of access to the object." United States v. Hayes, 75 F.4th 925, 928 (8th Cir. 2023) (citing Horton v. California, 496 U.S. 128, 136–37 (1990)).

On appeal, Valdivia and Free argue[3] that a genuine dispute of material fact remains as to whether the incriminating character of the marijuana in the car was "immediately apparent." Porsch testified that he recognized the substance as marijuana and—contrary to Valdivia and Free's assertion otherwise—that he relied on both his training and his experience when he did so. Porsch's body camera video also recorded him when he said, "There's marijuana in there." Valdivia and Free point out that no marijuana can be seen on Porsch's body camera footage, but they offer nothing to substantiate the notion that Porsch did not see what he *believed* to be marijuana in the car. See Smith v. Kilgore, 926 F.3d 479, 484 (8th Cir. 2019) ("[Plaintiffs] 'may not stave off summary judgment armed with only the hope that the jury might disbelieve witnesses' testimony.'") (quoting Thompson v. Hubbard, 257 F.3d 896, 899 (8th Cir. 2001)). The district court did not err in granting summary judgment to both officers on this claim. See United States v. Smith, 990 F.3d 607, 612 (8th Cir. 2021).

D.

Finally, Valdivia and Free argue that they were arrested without probable cause. "A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least 'arguable probable cause.'" Stewart v. Garcia, 139 F.4th 698, 705 (8th Cir. 2025) (quoting Gilmore v. City of Minneapolis, 837 F.3d 827, 832 (8th Cir. 2016)).

Porsch had probable cause to arrest Valdivia. Porsch saw Valdivia in the driver's seat of a car that had just pulled over, and Valdivia admitted he had a suspended driver's license. In addition, Porsch saw marijuana in the car. On these

---

[3]Valdivia and Free also contend that the two officers were not "lawfully present" at the car because it was Valdivia's unlawful detention that "facilitated their arrival at the vehicle," but we have already resolved this issue. In any event, "[t]he act of looking through a car window is not a search for Fourth Amendment purposes[.]" United States v. Bynum, 508 F.3d 1134, 1137 (8th Cir. 2007) (citing United States v. Hatten, 68 F.3d 257, 261 (8th Cir. 1995)).

facts, there was probable cause to arrest Valdivia for driving with a suspended license—a serious misdemeanor, see Iowa Code § 321J.21; State v. Werner, 919 N.W.2d 375, 377 (Iowa 2018), and for possession of marijuana, see Iowa Code § 124.401(5)(a)-(e); United States v. Haynes, 958 F.3d 709, 715 (8th Cir. 2020) (finding probable cause to arrest the defendant after he produced a marijuana cigarette) (citations omitted).

And, at the least, arguable probable cause supported Free's arrest. By the time she was taken into custody, Porsch had found marijuana on the passenger side of the car where Free had been sitting. This was sufficient to find Porsch had arguable probable cause to arrest Free for possession of marijuana. See Iowa Code § 124.401(5)(a)–(e); see United States v. Mathes, 58 F.4th 990, 994 (8th Cir. 2023) (finding probable cause to find the defendant was in possession of methamphetamine found in a car in which she was driving). The district court did not err in granting summary judgment to the officers on this claim.

III.

We affirm the judgment of the district court.

_____