# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1750
_____

United States of America

*Plaintiff - Appellee*

v.

Eric W. Quinn

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: November 19, 2015
Filed: February 4, 2016

_____

Before COLLOTON, GRUENDER, and SHEPHERD, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Eric W. Quinn was charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  After the district court[1] denied his motion to

---

[1]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri, adopting the report and recommendation of the Honorable John T. Maughmer, United States Magistrate Judge for the Western District of Missouri.

suppress evidence found after his arrest, Quinn conditionally pleaded guilty, reserving his right to appeal the suppression issue. The district court sentenced him to 40 months' imprisonment. Quinn now appeals, and we affirm.

I.

At around 2:30 a.m. on May 19, 2013, officers with the Kansas City Police Department responded to a report of a wreck involving a stolen car. Several men fled the scene. Immediately after the crash, police apprehended one suspect, who stated that one of the other suspects may have had a handgun. Police also found a bag containing ammunition in the vehicle. Officers saw two other suspects run northbound from the scene of the accident. The suspects were described as white males: one wore a blue hooded sweatshirt and the other wore a white t-shirt and had a long ponytail.

Officer Jose Madera responded to a radio call to look for these suspects. He assisted other officers in establishing a perimeter around the scene. Madera activated his police lights and siren while establishing and patrolling the perimeter, a tactic used to get potential suspects to hide from the surrounding police officers rather than flee outside of the perimeter, which spanned several blocks. During the search, Madera positioned his car on the northwest portion of the perimeter, which allowed him to observe the perimeter's north and west boundaries. He had been informed of the descriptions of the two white male suspects. He also had been told that the suspects were last seen fleeing north, toward his section of the perimeter, and that one suspect may have been armed. Madera saw only two pedestrians in the area: both were male, and both were walking south from Madera's location.

At 3:10 a.m., approximately forty minutes after the search began, Madera observed a white male in his mid-twenties wearing a dark t-shirt and jeans. The man, later identified as Quinn, emerged from an alley and began walking north, away from

the stolen vehicle. After noticing that Quinn was "constantly looking over his left shoulder towards" Madera's police cruiser, Madera decided to conduct a pedestrian check.

Officer Madera approached Quinn and asked for his name. Madera called for another officer, who had seen the suspects flee, to determine if the officer could identify Quinn. While waiting for the second officer, Madera handcuffed Quinn and performed a brief frisk. He did not discover any weapons. After the frisk, Madera entered his vehicle to check Quinn's criminal history, and he discovered that Quinn had an outstanding warrant for violating the terms of his probation. The time period between when Madera first approached Quinn and when he learned that Quinn had an outstanding arrest warrant was approximately three minutes. Madera placed Quinn under arrest and conducted a search, which revealed that Quinn was carrying a gun and a small amount of methamphetamine.

Quinn was indicted for being a felon in possession of a firearm. He filed a motion to suppress evidence. After an evidentiary hearing, the magistrate judge issued a report and recommendation denying Quinn's motion. The district court adopted the report and recommendation over Quinn's objection.

After the court denied his suppression motion, Quinn conditionally pleaded guilty to being a felon in possession of a firearm. Quinn's presentence investigation report included a four-level increase under USSG § 2K2.1(b)(6)(B) for possession of the firearm in connection with another felony, possession of methamphetamine. The district court applied the enhancement over Quinn's objection.

II.

Quinn presents two challenges on appeal. First, he argues that the district court erred by denying his motion to suppress the evidence obtained during the search

incident to his arrest because Officer Madera did not have reasonable suspicion to stop him. Second, he argues that the district court erred in assessing a sentencing guidelines enhancement under USSG § 2K2.1(b)(6)(B) for possession of a firearm in connection with another felony offense.

A.

Quinn argues that Officer Madera violated his Fourth Amendment rights because Madera did not have reasonable suspicion to conduct a *Terry* stop. *See Terry v. Ohio*, 392 U.S. 1 (1968). He does not challenge the manner or duration of the stop, and he does not challenge the search incident to his arrest. In reviewing the denial of a motion to suppress, we review the district court's findings of fact for clear error and review *de novo* the ultimate conclusion of whether the stop and search violated the Fourth Amendment. *United States v. Garcia*, 23 F.3d 1331, 1334 (8th Cir. 1994). The district court's denial of a motion to suppress will be upheld unless it is not supported by substantial evidence, is based on an erroneous interpretation of applicable law, or is clearly mistaken in light of the entire record. *United States v. Hastings*, 685 F.3d 724, 727 (8th Cir. 2012).

A police officer can stop and briefly detain a person for investigatory purposes if the officer has a reasonable suspicion that criminal activity "may be afoot." *Terry*, 392 U.S. at 30. To establish that a *Terry* stop was supported by reasonable suspicion, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21. The concept of reasonable suspicion is not "readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). Instead, in evaluating the validity of a *Terry* stop, we must consider the totality of the circumstances. *United States v. Cortez*, 449 U.S. 411, 417 (1981). "Factors that may reasonably lead an experienced officer to investigate include time of day or night, location of the suspect parties, and the parties' behavior when they become aware of

the officer's presence." *United States v. Dawdy*, 46 F.3d 1427, 1429 (8th Cir. 1995). In addition, a person's temporal and geographic proximity to a crime scene, combined with a matching description of the suspect, can support a finding of reasonable suspicion. *United States v. Juvenile TK*, 134 F.3d 899, 903-04 (8th Cir. 1998).

We agree with the district court's conclusion that Madera had reasonable suspicion to conduct a *Terry* stop. Quinn was stopped within a few blocks of the wreck of a stolen car, roughly forty minutes after officers saw suspects flee the crime scene. He partly matched the description of at least one suspect whom officers had observed fleeing northbound toward Madera's section of the perimeter. Madera saw Quinn emerge from an alley and walk away from the direction of the crime scene, crossing from inside of the police perimeter to outside its boundaries. The stop occurred late at night, when few pedestrians were around; in fact, Madera previously had seen only two other pedestrians near his corner of the perimeter, both of whom were walking into the perimeter, toward the scene of the crime. Finally, Madera stated that Quinn reacted suspiciously when he noticed Madera's presence by "constantly looking over his left shoulder towards [Madera's] direction."

Quinn argues that Officer Madera did not have reasonable suspicion to stop him. First, he contends that his appearance did not match the suspects' descriptions: Quinn was wearing a dark t-shirt when Madera stopped him, whereas one suspect wore a white t-shirt, and the other a blue hooded sweatshirt. He argues that his similarity to the suspects' traits—being white and male—was not sufficient to support reasonable suspicion. Second, he claims that our cases relying on the suspects' proximity to the crime scene are inapposite because those cases involved much shorter periods of time between the commission of the crimes and the officers' detention of the suspects. *See, e.g.*, *Juvenile TK*, 134 F.3d at 904 (affirming denial of suppression motion where arresting officer stopped defendant within five minutes of receiving dispatch and within two blocks of the crime scene); *United States v. Walker*, 771 F.3d 449, 450 (8th Cir. 2014) (holding that officer had reasonable

suspicion to stop defendant based on dispatch stating that similar vehicle had been involved in shooting one minute earlier, three blocks away). Third, Quinn argues that he did not act suspiciously when he noticed Madera's patrol car.

We disagree. The fatal flaw in Quinn's approach is that he challenges the sufficiency of each factor in isolation from the rest. The totality-of-the-circumstances test "precludes this sort of divide-and-conquer analysis." *United States v. Arvizu*, 534 U.S. 266, 274 (2002). An officer may have reasonable suspicion to conduct a *Terry* stop based on a combination of factors even where no single factor, considered alone, would justify a stop. *Terry*, 392 U.S. at 22 (holding that although each of defendant's acts was "perhaps innocent in itself," when considered together, they "warranted further investigation"); *United States v. Sokolow*, 490 U.S. 1, 9 (1989) ("Any one of these factors is not by itself proof of any illegal conduct and is quite consistent with innocent travel. But we think taken together they amount to reasonable suspicion.").

Quinn's attempts to undermine the factors that contributed to Madera's reasonable suspicion fail when each factor is considered in light of the totality of the circumstances. Although Madera relied on a relatively generic suspect description—one which Quinn did not match perfectly[2]—his reliance was justified due to the lack of other pedestrians within the perimeter. We have held that generic suspect descriptions and crime-scene proximity can warrant reasonable suspicion where there are few or no other potential suspects in the area who match the description. For example, in *Juvenile TK*, the arresting officer responded to a dispatch reporting a robbery committed by a male driving a gray vehicle. 134 F.3d at 901. Despite the vague description of the suspect and his vehicle, we held that the officer had reasonable suspicion to stop the defendant, in part because of the lack of

---

[2]Quinn was wearing a dark t-shirt, whereas one suspect was described wearing a blue hooded sweatshirt. Officer Madera noted that a sweatshirt easily could be discarded by a fleeing suspect, an explanation the district court reasonably credited.

other vehicles in the area at the time. *Id.* at 902-04; *see also United States v. Witt*, 494 F. App'x 713, 715-16 (8th Cir. 2012) (holding that officer had reasonable suspicion to stop defendant based on description of green station wagon with Colorado plates, even though defendant's car had Nebraska plates, because no other vehicle in rural area traveling away from the crime scene fit the description). In this case, Officer Madera had observed only two other pedestrians in the area during the search. Even assuming that either pedestrian matched the suspect descriptions, Madera had no reason to think that they were involved with the crash because he saw them walking into the perimeter, toward the crime scene, and because he thought that their "demeanor and attitude were very calm." In contrast, Madera observed Quinn walking away from the scene and acting suspiciously.

Similarly, we do not think that the forty-minute gap between the crime and Quinn's sighting undermined Madera's reasonable suspicion. Madera had reason to believe that the suspects still would be close to the crime scene forty minutes after the wreck. He testified that he and other officers established and patrolled a perimeter to prevent the suspects from fleeing beyond the immediate area; it was not unreasonable for Madera to believe that these tactics had worked and that the suspects had been contained within the perimeter. Further, the lack of other pedestrians in the area likely would have made it more difficult for a suspect to cross the perimeter undetected. We thus reject Quinn's argument that his detention occurred too long after the crime for his presence near the crime scene to support reasonable suspicion. *See Witt*, 494 F. App'x at 715-16 (holding that officer had reasonable suspicion to stop defendant an hour after a dispatch, 50 miles from the crime scene, because officer had seen only six vehicles in rural area that day, and defendant drove the only vehicle that matched description from dispatch).

In addition to facts connecting Quinn to the stolen vehicle, Madera's observation that Quinn acted suspiciously when he noticed Madera's presence further supported his reasonable suspicion. *See Dawdy*, 46 F.3d at 1429; *see also United*

*States v. Raino*, 980 F.2d 1148, 1150 (8th Cir. 1992) (holding that defendant's nervous appearance and his attempt to evade police contributed to reasonable suspicion). Quinn argues that we should accord little weight to Madera's statement that Quinn reacted suspiciously when he saw Madera's marked patrol car. However, the district court found that Quinn did look back constantly toward Madera and that this reaction was suspicious, further supporting Madera's reasonable suspicion. The district court's finding was not clearly erroneous. *See Garcia*, 23 F.3d at 1334.

In sum, based on the totality of the circumstances—Quinn's proximity to the crime scene, a suspect description that matched Quinn's race and sex, the lack of other pedestrians in the area, and his suspicious reaction after noticing Officer Madera—we agree with the district court that Madera had reasonable suspicion to stop Quinn. *Cf. Dawdy*, 46 F.3d at 1429-30 (holding that officer had reasonable suspicion to conduct *Terry* stop where defendant was parked in an empty parking lot of a pharmacy that was closed for the night, officer was aware that pharmacy's burglary alarm had gone off on prior occasions, and defendant attempted to leave when the officer entered the parking lot).

B.

We next turn to Quinn's argument that the district court erred by applying a four-level enhancement under USSG § 2K2.1(b)(6)(B) for possessing a firearm in connection with another felony offense. Quinn does not dispute that he possessed a personal-use amount of methamphetamine at the time of his arrest or that this possession constituted a felony offense under Missouri law. *See* Mo. Rev. Stat. § 579.015. Instead, he argues that the district court did not make sufficient factual findings supporting the Government's claim that he possessed the firearm "in connection with" his possession of the methamphetamine. We review the district court's application of the Guidelines *de novo* and its factual findings for clear error. *United States v. Blankenship*, 552 F.3d 703, 704 (8th Cir. 2009).

For purposes of the § 2K2.1(b)(6)(B) enhancement, a firearm is possessed "in connection with" a drug possession felony if it "facilitated, or had the potential of facilitating," that other felony. § 2K2.1 cmt. 14(A). We repeatedly have held that a defendant's possession of a firearm with a personal-use amount of illegal drugs can meet this standard. *United States v. Holm*, 745 F.3d 938, 940 (8th Cir. 2014) (collecting cases). Firearm possession can facilitate possession of small quantities of illegal drugs because the firearm can "dangerously embolden the offender." *United States v. Regans*, 125 F.3d 685, 687 (8th Cir. 1997). After considering the instant offense, as well as Quinn's history of illegal gun and drug possession, the district court found that Quinn's possession had the potential to facilitate his use or sale of the methamphetamine. Given Quinn's record, we hold that the district court did not clearly err in making this finding. *See United States v. Sneed*, 742 F.3d 341, 344 (8th Cir. 2014) ("[W]hen a drug user chooses to carry illegal drugs out into public with a firearm, an 'in connection with' finding 'will rarely be clearly erroneous.'" (quoting *United States v. Fuentes Torres*, 529 F.3d 825, 827 (8th Cir. 2008))).

III.

For all of the foregoing reasons, we affirm.

_____