# United States Court of Appeals
## For the Eighth Circuit
_____

No. 23-2720
_____

United States of America

*Plaintiff - Appellant*

v.

Mykel Lee McMillion

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Southern District of Iowa - Central
_____

Submitted: March 13, 2024
Filed: May 13, 2024
_____

Before GRUENDER, SHEPHERD, and GRASZ, Circuit Judges.
_____

GRUENDER, Circuit Judge.

A federal grand jury charged Mykel Lee McMillion with knowingly possessing a firearm after having been convicted of a crime punishable by imprisonment for more than one year. *See* 18 U.S.C. §§ 922(g)(1), 924(a)(8). He moved to suppress the admission into evidence of the firearm he was alleged to have possessed, arguing that Des Moines Police Department Officers Ernesto Escobar and Grant Purcell did not have reasonable suspicion to stop the white Buick in which

McMillion was a passenger. The district court granted the motion. The Government appeals, and we reverse.

**I.**

At 4:40 a.m. on September 25, 2022, a security guard at the Oakridge Neighborhoods apartment complex called the Des Moines Police Department to report that a white Buick was parked in a restricted area near Oakridge's maintenance shop and that one of the occupants of the Buick had a gun. Oakridge had recently added security guards as part of a suite of measures designed to alleviate the significant amount of violent crime at the complex, which had been the scene of over three hundred calls to the police in the six months preceding September 25.

Officers were dispatched to the complex. By the time they arrived, the white Buick had moved from the maintenance shop to a tenant parking spot. Officer Escobar was the first on the scene and met one of the Oakridge security guards in the parking lot near the Buick. The security guard informed Officer Escobar that "one of the male individuals" in the Buick "had a gun in his hand and was swinging it around." While Officer Escobar was speaking to the Oakridge security guard, the Buick turned on its lights and began to back out, at which point Officer Escobar drove closer and turned on his bright "takedown" lights. The car stopped, and Officer Escobar, along with the just-arrived Officer Purcell, walked up to it. As they approached, they noticed a man in the back seat who matched the previous description of the man who had been swinging a gun around. They also noticed the man's "furtive movements that appeared to be designed to conceal something from . . . view." The man identified himself as Mykel McMillion, a name Officer Purcell recognized from an officer-safety bulletin concerning gang- and firearm-related activity. Officer Purcell and two Oakridge security guards then removed McMillion from the white Buick, handcuffed him, patted him down, and located a handgun concealed in McMillion's pants.

The district court determined that these circumstances were insufficient to create reasonable suspicion and granted McMillion's motion to suppress. In particular, the district court reasoned that the time—the middle of the night—and the location—a notoriously high-crime area—were irrelevant to the reasonable-suspicion analysis, as was the report that an individual was swinging a gun around. According to the district court, these factors were irrelevant because permitless open carry is legal in Iowa and "[t]he Iowa Legislature did not exclude 'high-crime neighborhoods' from the new gun laws or restrict open-carry rights to particular times of day." In short, the district court concluded that "[t]here is . . . a difference between what is 'dangerous,' and what is 'unlawful.'" The Government appeals, arguing that reasonable suspicion existed at the time Officer Escobar stopped the white Buick.

**II.**

"When reviewing a district court's grant of a motion to suppress, we review its factual findings for clear error and its application of law de novo." *United States v. Thabit*, 56 F.4th 1145, 1149 (8th Cir. 2023). "The existence of reasonable suspicion is a mixed question of law and fact that appellate courts review de novo." *Id.*

"A police officer may conduct an investigative stop," a so-called *Terry* stop, "if [he] has a reasonable suspicion supported by articulable facts that criminal activity may be afoot." *United States v. Roberts*, 787 F.3d 1204, 1209 (8th Cir. 2015) (internal quotation marks omitted); *see generally Terry v. Ohio*, 392 U.S. 1 (1968). "To establish that a *Terry* stop was supported by reasonable suspicion, the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *United States v. Quinn*, 812 F.3d 694, 697 (8th Cir. 2016) (internal quotation marks omitted). "The concept of reasonable suspicion is not readily, or even usefully, reduced to a neat set of legal rules." *Id.* (internal quotation marks omitted). "Instead, in evaluating the validity of a *Terry* stop, we must consider the totality of the

-3-

circumstances." *Id.* "Reasonable suspicion must be supported by more than a mere hunch, but the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying the preponderance of the evidence standard." *Roberts*, 787 F.3d at 1209 (internal quotation marks omitted). "This analysis requires us to consider that officers may draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them." *Id.* (internal quotation marks omitted). "[W]e view the officers' observations as a whole, rather than as discrete and disconnected occurrences." *United States v. Hightower*, 716 F.3d 1117, 1121 (8th Cir. 2013) (internal quotation marks omitted).

"After a suspect is lawfully stopped, an officer may in some circumstances conduct a pat-down search for weapons." *United States v. Trogdon*, 789 F.3d 907, 910 (8th Cir. 2015). "To justify the search, the officer must have reasonable, articulable suspicion that the suspect is armed and dangerous." *Id.* "The officer need not know for certain that the suspect is armed; instead, a search is permitted if a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* (internal quotation marks omitted).

"Factors that may reasonably lead an experienced officer to investigate include time of day or night, location of the suspect parties, and the parties' behavior when they become aware of the officer's presence." *Quinn*, 812 F.3d at 697-98. Additional factors include whether the suspect parties are "located in a high-crime area" or an area where crimes have recently been committed. *Trogdon*, 789 F.3d at 910. That someone has "previously observed a pistol in [defendant's] hand further indicate[s] that the officers [have] a reasonable suspicion of criminal activity . . . ." *United States v. Houston*, 920 F.3d 1168, 1172 (8th Cir. 2019). "[U]nprovoked flight at the sight of an officer can contribute to reasonable, articulable suspicion." *United States v. Horton*, 611 F.3d 936, 940 (8th Cir. 2010). Importantly, even if "[a]ll of [defendant's] conduct was by itself lawful," reasonable suspicion may still exist—if conduct is "ambiguous and susceptible of an innocent explanation" as well as a criminal one, "officers [can] detain the individuals to resolve the ambiguity."

*Illinois v. Wardlow*, 528 U.S. 119, 125 (2000); *see United States v. Stewart*, 631 F.3d 453, 457 (8th Cir. 2011) ("[F]actors that individually may be consistent with innocent behavior, when taken together, can give rise to reasonable suspicion . . . .").

Here, Officers Escobar and Purcell responded to a 4:40 a.m. call from the security guards at a notoriously high-crime apartment complex. They learned that an unknown car was moving about the complex, including in areas where personal cars were not allowed, and that one of the occupants of the car had a gun and was swinging it around. When the officers got close to the car, it attempted to leave the area. McMillion argues that this was merely the behavior of an individual exercising his right to openly carry a gun in a dangerous neighborhood. Perhaps. But while the mere presence of a firearm in an open carry jurisdiction does not itself create reasonable suspicion of criminal activity, the presence of a firearm taken together with the "high-crime area," the "time of . . . night," the report that Oakridge security had "previously observed a pistol in [McMillion's] hand," the "location of the suspect parties," and their "behavior when they [became] aware of the officer[s'] presence" may be indicative of criminal activity such as trespass, assault, or burglary. *See Trogdon*, 789 F.3d at 910-14 (holding that officers had reasonable suspicion to stop defendant when he "was loitering late at night in a commercial parking lot with a small group of people . . . in a high-crime area where violence and gang and narcotics activity was commonplace," and where "the group took evasive action after sighting the officers"). Officers Escobar and Purcell were allowed to "detain [McMillion] to resolve the ambiguity." *Wardlow*, 528 U.S. at 125. And given that Officers Escobar and Purcell were told that one of the car's occupants was armed, they were justified in "conduct[ing] a pat-down search for weapons," *Trogdon*, 789 F.3d at 910, on the man in the backseat of the Buick who matched the previous description of the man who had been swinging a gun around and who appeared to be trying to conceal something from view.

Evaluating the officers' observations as a whole, we find that articulable facts support the existence of reasonable suspicion sufficient for a *Terry* stop. Thus, the district court erred in granting the motion to suppress.

**III.**

For the aforementioned reasons, we reverse the district court's order granting the motion to suppress and remand the case for further proceedings.

_____