# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-1311
_____

United States of America

*Plaintiff - Appellee*

v.

John Earl Broomfield, Jr.

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa - Western
_____

Submitted: December 14, 2023
Filed: June 3, 2024
[Unpublished]
_____

Before SMITH, Chief Judge,[1] GRUENDER, and GRASZ, Circuit Judges.
_____

PER CURIAM.

John E. Broomfield appeals the district court's[2] denial of his motion to suppress evidence obtained from a police stop and its application of a four-level firearm enhancement during sentencing. We affirm the district court.

_____

[1]Judge Smith completed his term as chief judge of the circuit on March 10, 2024. *See* 28 U.S.C. § 45(a)(3)(A).

[2]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

## I. *Background*

In December 2021, two 911 callers reported a disturbance involving an injured male down on the sidewalk in Council Bluffs, Iowa. Both callers provided their full names and phone numbers to the 911 operators. Neither caller saw what precipitated the victim's condition. The first caller reported a confrontation, and the second caller reported that an individual near the injured person was yelling at or toward the victim. The second caller described the yelling suspect as a Black male wearing a black coat, a North Face jacket underneath the black coat, ripped jeans, gray shoes, and a black-and-white New Orleans Saints hat. That caller further said that the suspect walked away from the injured male and toward a neighboring bar, the BLK Squirrel. Both callers remained on the phone with 911 operators until officers arrived.

Officer Benson arrived on scene first. He asked bystanders for a description of the persons involved in the disturbance. At least one bystander, who was likely the second 911 caller because an audio recording of that call captured the caller conversing with a police officer,[3] said that a Black male wearing blue jeans, a black jacket, and a New Orleans Saints hat was yelling near the victim. The bystander also said that the suspect walked toward the BLK Squirrel and may have gone inside. The bystander's recollection of the suspect's physical description and direction of travel matched the information provided by the 911 callers.

Officer Archibald arrived on scene shortly after Officer Benson, and together they apprehended Broomfield. After discussing the description of the suspect, the officers walked to the BLK Squirrel. When the officers arrived, they spotted—through the bar's front window—an individual who matched the suspect's description. The officers waited by the front entrance, allowing those inside to leave the bar. The officers' body camera footage shows that Broomfield looked toward the door and spotted the officers. As Broomfield noticed the officers, Officer Benson

---

[3]Unfortunately, Officer Benson's body camera did not capture his conversation with the bystander.

said, "Come out here boss." R. Doc. 51-2, at 1:14–15. Officer Archibald said, "Come on," and gestured with his hand for Broomfield to step outside. *Id.* at 1:15. Broomfield, instead, turned away and walked toward the back door. As the officers pursued, Officer Benson said to Broomfield, "Hey, bud." *Id.* at 1:19. Broomfield, apparently ignoring the officers, continued walking away. Having gotten closer, Officer Benson grabbed the back of Broomfield's coat, which caused Broomfield to look at Officer Benson. Broomfield then pulled away from Officer Benson's grasp and continued toward the exit. As Broomfield pulled away, a gun fell from his person. Broomfield then shed his coat and ran out the exit. Officers caught up to Broomfield and detained him on the bar's back patio.

Broomfield was charged with one count of being a felon in possession of a firearm under 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Broomfield moved to suppress the gun that officers recovered from the encounter. The district court denied the motion. Thereafter, Broomfield pleaded guilty, reserving his right to appeal the denial of his motion to suppress. During sentencing, the district court applied a four-level enhancement because Broomfield committed a felony while in possession of a firearm. U.S.S.G. § 2K2.1(b)(6)(B). The court then calculated Broomfield's Guidelines range to be between 100 and 120 months and sentenced Broomfield to 90 months' imprisonment. On appeal, Broomfield argues that the district court erred because the officers lacked reasonable suspicion to justify his detention under *Terry v. Ohio*, 392 U.S. 1 (1968). He also contends that the district court erred when it applied a four-level firearm enhancement during sentencing.

II. *Discussion*

A. *Motion to Suppress*

"On a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions de novo." *United States v. Martin*, 15 F.4th 878, 881 (8th Cir. 2021) (emphasis omitted). "The district court's denial of a motion to suppress will be upheld unless it is not supported by substantial evidence, is based on an erroneous interpretation of applicable law, or is clearly mistaken in light of the

entire record." *United States v. Quinn*, 812 F.3d 694, 697 (8th Cir. 2016). As for *Terry* stops,

> [t]o establish that a *Terry* stop was supported by reasonable suspicion, the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. The concept of reasonable suspicion is not readily, or even usefully, reduced to a neat set of legal rules. Instead, in evaluating the validity of a *Terry* stop, we must consider the totality of the circumstances. Factors that may reasonably lead an experienced officer to investigate include time of day or night, location of the suspect parties, and the parties' behavior when they become aware of the officer's presence. In addition, a person's temporal and geographic proximity to a crime scene, combined with a matching description of the suspect, can support a finding of reasonable suspicion.

*Id.* at 697–98 (internal quotations and citations omitted).

We conclude that the officers had reasonable suspicion to detain Broomfield. After receiving the suspect's description, Officers Benson and Archibald went to the BLK Squirrel seeking the suspect. The officers spotted Broomfield—who matched the suspect's description—through a large glass window next to the main entrance of the bar. When Broomfield saw the officers, he turned around and began walking to the back of the bar while ostensibly defying the officers' commands. The officers had reasonable suspicion to stop Broomfield based on Broomfield's match with the suspect's description, his intentional walk away from the officers once he saw them, and his ignoring their commands. *See id.* Moreover, these facts also support a rational inference that Broomfield was involved in, or knew valuable information about, the reported incident. Thus, the district court did not err when it denied Broomfield's suppression motion.

Broomfield argues that the officers did not have reasonable suspicion for the stop because the 911 calls were anonymous tips; we disagree. The two 911 calls

-4-

were not anonymous. The 911 recordings show that both callers gave the dispatchers their first and last names and their phone numbers. Moreover, both callers were at the scene and remained there until officers arrived. In fact, one 911 recording captured the caller speaking to an officer while on the phone with a 911 dispatcher. Given these facts, the 911 calls were not anonymous.[4]

### B. *Four-Level Firearm Enhancement*

Next, Broomfield disputes the four-level firearm enhancement the district court applied during sentencing. He contends that he did not know that the person grabbing him was a police officer and that he did not interfere with the police officer's duties until after he was disarmed. This court reviews a "district court's application of the Guidelines de novo and its factual findings for clear error." *Id.* at 700 (emphasis omitted). The Sentencing Guidelines instruct courts to increase the offense level by four "[i]f the defendant . . . used or possessed any firearm . . . in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). The PSR also recommended this four-level firearm enhancement.

Under Iowa law, interference with official acts can be a felony. "A person commits interference with official acts when the person knowingly resists or obstructs anyone known by the person to be a peace officer . . . ." Iowa Code § 719.1(1)(a) (2021). "If a person commits interference with official acts . . . and in so doing . . . is armed with a firearm, that person commits a class 'D' felony." *Id.* § 719.1(1)(f).

"[T]he standard for establishing a violation of the interference with official acts statute is generally fairly low. . . . '[T]he key question is whether the officer's actions were hindered.'" *State v. Wilson*, 968 N.W.2d 903, 918 (Iowa 2022) (quoting *Lawyer v. City of Council Bluffs*, 361 F.3d 1099, 1107 (8th Cir. 2004)). In *Wilson*,

---

[4]Broomfield argues that the Supreme Court's decision in *Florida v. J.L.* supports his argument that the officers did not have reasonable suspicion to perform a *Terry* stop. 529 U.S. 266 (2000). But *J.L.* is distinguishable because there the tipster was anonymous. *Id.* at 268. Here, the 911 callers were not anonymous.

the Iowa Supreme Court upheld a conviction under the statute when a defendant was "twisting and jostling around while officers attempted to place handcuffs on her." *Id.* In *State v. Dewitt*, the Iowa Supreme Court affirmed a conviction under the statute when plain-clothes officers, with visible police badges around their necks, grabbed the defendant by the arm inside a Walmart, and the defendant tried to break from the officers' grasp. 811 N.W.2d 460, 465–66 (Iowa 2012). In *State v. Legg*, the Iowa Supreme Court explained that the defendant's actions of speeding away from an officer, running a stop sign, and retreating into the garage at her home after the officer began pursuing her with his lights activated violated the statute. 633 N.W.2d 763, 771–72 (Iowa 2001).

Applying Iowa caselaw, we hold that Broomfield violated Iowa's interference with official acts statute, a felony. When Officer Benson grabbed the back of Broomfield's coat, Broomfield looked at Officer Benson—who was readily identifiable as a police officer—and continued toward the exit. After walking several feet while in Officer Benson's grasp, Broomfield was placed against a wall and then a firearm fell from his person. Broomfield's continued departure while in Officer Benson's grasp constituted interference with official acts under Iowa law. *See Dewitt*, 811 N.W.2d at 465–66. Though brief, Broomfield walked away from Officer Benson's grasp while in possession of a firearm. The possession's brevity after the grasp is of no moment. A firearm is dischargeable in mere seconds. Broomfield interfered with the official acts of a peace officer and was armed while doing so. The district court did not err by applying the four-level firearm enhancement per U.S.S.G. § 2K2.1(b)(6)(B).

### III. *Conclusion*

We affirm the district court's denial of Broomfield's motion to suppress and the application of the four-level firearm enhancement.

_____